## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.

**SECURITIES AND EXCHANGE COMMISSION,**

   **Plaintiff,**

**v.**

**JAN ATLAS,**

   **Defendant.**

_____/

### COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission ("Commission") alleges as follows:

### I.  INTRODUCTION

1.  From no later than February 2014 until July 27, 2018, 1 Global Capital LLC ("1 Global" or "the Company") fraudulently raised more than $322 million from more than 3,600 investors nationwide in an unregistered securities offering.  Defendant, attorney Jan D. Atlas, while serving as 1 Global's outside attorney, opined on two occasions that the notes 1 Global offered and sold likely were not securities.  In May 2016 and again in August 2016, Atlas authored opinion letters for 1 Global in which he knowingly falsified or omitted important facts giving rise to his opinion that the notes 1 Global was offering to investors were likely not securities.

2.  Atlas became aware that 1 Global would use those opinion letters to facilitate its unregistered, fraudulent offering.  Atlas also knew that authoring letters stating that 1 Global's notes likely were not securities improved his chances of profiting from the sale of 1 Global's notes, as he received a percentage of commissions generated on the offer and sale of the notes—for a total of approximately $627,000.

3.      1 Global, a private, South Florida firm, used a network of sales agents to offer and sell unregistered securities to investors in no fewer than 42 states to fund its business of offering short-term financing to small and medium-sized businesses.  The Company, through its marketing materials distributed to sales agents and the sales agents themselves, promised investors a high-return, low-risk investment in which 1 Global would use investor money to make short-term cash advances called Merchant Cash Advances ("MCAs") to businesses that could not obtain more traditional financing such as bank loans.

4.      In reality, the Company used substantial investor funds for purposes other than the MCAs, including paying operating expenses and funding the luxury lifestyle of its founder, Chairman and CEO, Carl Ruderman.

5.      Through his conduct, Atlas aided and abetted 1 Global and Ruderman's violations of Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), and Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78j(b) and 17 C.F.R. §240.10b-5.  The Commission seeks injunctive relief, disgorgement of ill-gotten gains and a civil penalty against Atlas.

## II.  DEFENDANT

6.      Atlas, 74, a securities lawyer, is a resident of Fort Lauderdale, Florida, and was 1 Global's outside counsel while a partner at a Fort Lauderdale, Florida-based law firm.  Atlas is licensed to practice in Florida and New York.

## III.  JURISDICTION AND VENUE

7.      The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act, 15 U.S.C. §§77t(b), 77t(d), and 77v(a), and Sections 21(d), 21(e), and 27 of the Exchange Act, 15 U.S.C. §§78u(d), 78u(e), and 78aa.

2

8.      This Court has personal jurisdiction over Atlas and venue is proper in the Southern District of Florida as Atlas resides in the District and worked and committed the acts giving rise to the conduct alleged in the Complaint in Broward County.

9.      Atlas, directly and indirectly, made use of the means and instrumentalities of interstate commerce, and the mails, in connection with the acts, practices, and courses of business set forth in this Complaint.

## IV.  BACKGROUND

10.      According to its sales materials and website, 1 Global provided small and medium-sized businesses an alternative to borrowing money from traditional financial institutions.  The investment instruments investors signed provided that 1 Global would assign them a percentage of numerous MCAs and would earn money from sharing in the profits derived from those MCAs.

11.      Although 1 Global purported to limit its offering to sophisticated or qualified investors, in reality the Company and its sales agents mass marketed the investment to the public through brochures, flyers, seminars, and meetings.  1 Global never checked to ensure that any of its investors were sophisticated, and although the Company had a stated $25,000 minimum investment, the Company sometimes waived that requirement and put no restrictions on who sales agents could offer the investment to.

12.      1 Global's marketing materials touted the investment as a safe and less risky alternative to traditional stock market investments, and routinely promised investors annual returns in the high single to low double digits.

13.      The Company and Ruderman made numerous material misrepresentations and omissions to investors, including how 1 Global would use investor funds, the fees it would charge investors, sending investors monthly account statements that overstated the values of investors'

accounts and their rates of returns, and the role of the outside accounting firm.  In addition, Ruderman misappropriated at least $32 million to pay for his lavish personal expenses and to send to unrelated businesses in which he or his relatives had a beneficial interest.

14.     1 Global and Ruderman also falsely told sales agents, some of whom invested in 1 Global themselves, that the notes 1 Global was offering and selling were not securities, that 1 Global's offering did not need to be registered with the Commission pursuant to the federal securities laws, and that the sales agents did not need securities licenses to offer and sell 1 Global's notes.

15.     As a result of the Company and Ruderman's misuse and misappropriation of funds, 1 Global ran short of cash and filed for bankruptcy on July 27, 2018.  The Company subsequently ceased operations.

## V.  ATLAS' MISREPRESENTATIONS IN CONNECTION WITH THE OFFERING

### Atlas' First Opinion Letter

16.      In the spring of 2016, after another attorney had opined that 1 Global's notes likely were securities, Ruderman on behalf of 1 Global engaged Atlas to draft an opinion letter on the same subject.  Atlas drafted a letter dated May 17, 2016, (that he transmitted to Ruderman), in which he concluded that because the notes had maturity dates of nine months or less and were issued to sophisticated investors, the notes likely were not securities.

17.     At the time he drafted the May 17 opinion letter, Atlas knew that certain facts stated in the letter on which he was basing his opinion were false, and that he was omitting from the letter other facts inconsistent with his opinion.  For example, the letter based its conclusions in large part on statements that 1 Global was offering and selling nine-month notes, and only to sophisticated investors.  Atlas knew at the time that the nine-month notes had an automatic renewal feature,

which he omitted to discuss in his opinion letter. He also knew 1 Global offered and sold its notes to retail and unsophisticated investors. Atlas knew all of these facts were strong indicators that the notes were securities.

18.     Atlas knew that if 1 Global's notes were deemed securities, meaning the offering would be required to be registered with the Commission, that would undermine 1 Global's ability to raise money from investors.

19.     Approximately one month after Atlas' May 17 opinion letter, 1 Global's then-CFO retained another law firm to opine on whether the notes 1 Global offered to investors were securities. That law firm drafted two opinion letters concluding that the notes were securities, and that to be compliant with federal securities laws, 1 Global would have to stop selling notes for six months and then resume selling only nine-month notes and only to sophisticated investors.

**Atlas' Second Opinion Letter**

20.     In light of the second law firm's opinion letters, Ruderman on behalf of 1 Global again engaged Atlas to write a second opinion letter that would contradict the opinions that 1 Global's notes were securities.

21.     Atlas drafted a second opinion letter, dated August 25, 2016, that repeated the false and misleading statements made in his May 17 opinion letter, i.e., that 1 Global was offering nine-month notes to sophisticated investors.

22.     When Atlas drafted the August 25 opinion letter, he knew 1 Global had previously offered 12-month notes in addition to later offering nine-month notes, and that this fact raised integration issues, meaning that even if the instrument was fashioned solely as a nine-month note, it would not preclude the application of the registration provisions of the federal securities laws. He knew the facts that he either misrepresented or omitted in his second opinion letters were strong

indicators that the notes were securities and that 1 Global was required to register its offering with the Commission.

### 1 Global Used Atlas' Opinions to Induce Investments

23.    Atlas became aware that 1 Global would use his August 25 opinion letter to enable it to continue illegally offering and selling its securities.   Although 1 Global did not disseminate Atlas' opinion letters to investors, it did use them to assure its external sales agents, some of whom bought 1 Global's notes themselves, that the notes were not securities and the agents did not need to have a securities license to offer and sell the notes.

24.    It was important to the external sales agents to know that the notes 1 Global offered were not securities and absent the assurance that the notes were not securities they would not have offered 1 Global's notes to investors.

### Atlas' Compensation

25.    From 2016 through July 2018, when 1 Global filed for bankruptcy, Atlas received a percentage of the commissions generated on sales of 1 Global notes to investors, for a total of approximately $627,000.  Atlas received this money based on an agreement he made with the lead recruiter of sales agents, who, in large part, put together 1 Global's external sales force.  That lead recruiter was also a colleague at Atlas' law firm.

26.    As compensation for recruiting 1 Global's external sales force, 1 Global and Ruderman paid the lead recruiter a percentage of the commissions generated from sales of 1 Global's securities (initially 2%, and later as low as 1%).  Atlas, in turn, received approximately 15% to 20% of the lead recruiter's commissions.  Atlas knew that the money he received was a percentage of commissions generated from 1 Global securities transactions.

## VI.  CLAIMS FOR RELIEF

### COUNT I

### Aiding and Abetting 1 Global and Ruderman's Violations Of Section 17(a)(1) Of The Securities Act

27.     The Commission repeats and realleges Paragraphs 1 through 26 of this Complaint as if fully set forth herein.

28.     From no later than 2015 through July 2018, 1 Global and Ruderman, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, employed devices, schemes or artifices to defraud.

29.     By reason of the foregoing, Atlas aided and abetted 1 Global and Ruderman's violations of, and unless enjoined is reasonably likely to continue to violate, Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1).

### COUNT II

### Aiding and Abetting 1 Global and Ruderman's Violations Of Section 17(a)(2) Of The Securities Act

30.     The Commission repeats and realleges Paragraphs 1 through 26 of this Complaint as if fully set forth herein.

31.     From no later than 2015 through July 2018, 1 Global and Ruderman, in the offer or sale of securities by any use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

32.     By reason of the foregoing, Atlas aided and abetted 1 Global and Ruderman's violations of, and, unless enjoined is reasonably likely to continue to violate, Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2).

## COUNT III

### Aiding and Abetting 1 Global and Ruderman's Violations Of Section 17(a)(3) Of The Securities Act

33.     The Commission repeats and realleges Paragraphs 1 through 26 of this Complaint as if fully set forth herein.

34.     From no later than 2015 through July 2018, 1 Global and Ruderman, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, engaged in transactions, practices, or courses of business which operated or would have operated as a fraud or deceit upon the purchasers.

35.     By reason of the foregoing, Atlas aided and abetted 1 Global and Ruderman's violations of, and unless enjoined is reasonably likely to continue to violate, Section 17(a)(3) of the Securities Act, 15 U.S.C. § 77q(a)(3).

## COUNT IV

### Aiding and Abetting 1 Global and Ruderman's Violations Of Section 10(b) And Rule 10b-5(a) Of The Exchange Act

36.     The Commission repeats and realleges Paragraphs 1 through 26 of this Complaint as if fully set forth herein.

37.     From no later than 2015 through July 2018, 1 Global and Ruderman, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, employed devices, schemes, or artifices to defraud in connection with the purchase or sale of

securities.

38.     By reason of the foregoing, Atlas aided and abetted 1 Global and Ruderman's violations of, and unless enjoined is reasonably likely to continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5(a), 17 C.F.R. § 240.10b-5(a).

### COUNT V

**Aiding and Abetting 1 Global and Ruderman's Violations Of Section 10(b) And Rule 10b-5(b) Of The Exchange Act**

39.     The Commission repeats and realleges Paragraphs 1 through 26 of this Complaint as if fully set forth herein.

40.     From no later than 2015 through July 2018, 1 Global and Ruderman, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

41.     By reason of the foregoing, Atlas aided and abetted 1 Global and Ruderman's violations of, and unless enjoined is reasonably likely to continue to violate, Section 10(b) of the Exchange Act, 15 U.SC. § 78j(b), and Exchange Act Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b).

### COUNT VI

**Aiding and Abetting 1 Global and Ruderman's Violations Of Section 10(b) And Rule 10b-5(c) Of The Exchange Act**

42.     The Commission repeats and realleges Paragraphs 1 through 26 of this Complaint as if fully set forth herein.

43.     From no later than 2015 through July 2018, 1 Global and Ruderman, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, engaged in acts, practices, and courses of business which have operated, or are now operating and

will operate, as a fraud upon the purchasers of securities.

44.    By reason of the foregoing, Atlas aided and abetted 1 Global and Ruderman's violations of, and unless enjoined is reasonably likely to continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5(c), 17 C.F.R. § 240.10b-5(c).

## VII.  REMEDIES REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court find the Defendant aided and abetted the violations alleged, and:

## A.  Permanent Injunctive Relief

Issue a Permanent Injunction enjoining Atlas from aiding and abetting violations of Section 17(a) of the Securities Act, and Section 10(b) and Rule 10b-5 of the Exchange Act.

## B.  Disgorgement

Issue an Order directing Atlas to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Complaint.

## C.  Civil Penalties

Issue an Order directing Atlas to pay civil money penalties pursuant to Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act.

Respectfully submitted,

September 17, 2019                    By: **Robert K. Levenson**
                                         Robert K. Levenson
                                         Senior Trial Counsel
                                         Florida Bar No. 0089771
                                         Email:  levensonr@sec.gov
                                         Direct Dial:  (305) 982-6341

                                         Attorney for Plaintiff
                                         **SECURITIES AND EXCHANGE COMMISSION**
                                         801 Brickell Avenue, Suite 1800
                                         Miami, Florida 33131
                                         Telephone: (305) 982-6300